IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) CR 07-338 |
| | ) |
| ANTHONY J. JACKSON, | ) |
| a/k/a Anthony Jackson | ) |

## OPINION

Pending before the Court is Defendant Anthony Jackson's "Motion to Suppress Evidence and Statements" [Doc. #69]. In his Motion to Suppress, Defendant "moves this Court to suppress evidence and statements because the officers lacked probable cause or even reasonable suspicion to stop, search and seize Mr. Jackson and because his statements were made in violation of Miranda." Motion to Suppress, p. 1. A hearing on Defendant's Motion to Suppress was held on September 15, 2009. Testifying for the government were Officers Vincent Pacheco and Michael Reddy of the Pittsburgh Police Department. Mr. Jackson testified for himself. For the reasons set forth below, the Defendant's Motion to Suppress will be granted in part and denied in part.

I. Factual Background.

After hearing testimony at the suppression hearing and determining that the testimony of the two police officers was more credible than the testimony of Mr Jackson with respect to the events that occurred in the early morning of October 15, 2005, the Court makes the following findings of fact. At approximately 1:30 A.M., Mr. Jackson

was driving a black Isuzu Rodeo in a "high-crime" area, the Homewood neighborhood of Pittsburgh. The vehicle Mr. Jackson was driving had a Georgia license plate, ART 0255. The vehicle was observed by Officer Pacheco, who was on routine patrol in the neighborhood and driving a marked police car. Officer Pacheco decided to run a check on the license plate. In response to his inquiry, he was informed that the license plate on the vehicle had been reported stolen. Officer Pacheco asked for confirmation of the information and was again advised that the license plate had been reported stolen.

At this point, Officer Pacheco decided to pull over Mr. Jackson's vehicle, but as he was patrolling alone that night, he waited until he could receive back up from fellow police officers. Officer Pacheco received word by radio that he would be backed up; he then activated his lights and siren and stopped Mr. Jackson's vehicle. As he stopped the vehicle, Officer Michael Reddy and another City of Pittsburgh Police officer arrived behind Officer Pacheco's marked police car.

Officer Pacheco approached Mr. Jackson's vehicle and ordered Mr. Jackson to exit the vehicle. Officer Pacheco immediately placed Mr. Jackson in handcuffs for the officers' safety. A female passenger was present in Mr. Jackson's vehicle and remained in the vehicle for the duration of the stop.

Officer Pacheco explained to Mr. Jackson that the license plate of the vehicle Mr. Jackson was driving had been reported stolen in Georgia. Mr. Jackson explained to Officer Pacheco that he was the one who had reported the plate stolen. During this

conversation they were standing next to Mr. Jackson's vehicle near the driver's side front door, which was open.

While Officer Pacheco was explaining to Mr. Jackson why he had been stopped, Mr. Jackson appeared to be nervous. Additionally, twice Mr. Jackson nudged towards the open door of the vehicle. After observing Mr. Jackson move towards the door a second time, Officer Reddy told Officer Pacheco to move Mr. Jackson towards the rear of the vehicle, which Officer Pacheco did.

Officer Reddy then took a flashlight and shined it on the driver's seat and then the floorboard area of the driver's side of the car. There he saw the barrel of a pistol sticking out from under the driver's seat. Officer Reddy retrieved the firearm, which was loaded.

Officer Reddy informed Officer Pacheco that he had found a weapon in the vehicle. Officer Pacheco then asked Mr. Jackson if he had a permit in Pennsylvania for the firearm. Mr. Jackson responded "No." Mr. Jackson then immediately stated: "The weapon is not in my name. . . . I just bought it off of some guy."

Ultimately, Mr. Jackson was indicted on one count of unlawful possession of a firearm by a person who had previously been convicted of an offense punishable by more than one year imprisonment, in violation of 18 U.S.C. § 922(g).

## II. Legal Analysis.

### A. The initial stop by Officer Pacheco.

Mr. Jackson attacks the validity of the initial stop of his vehicle. The Fourth Amendment is not a guarantee against all search and seizures, but rather, only against unreasonable ones. As explained by the Third Circuit Court in U.S. v. Valentine, 232 F.3d 350, 353 (3d Cir. 2000), cert. den'd, 532 U.S. 1014, 121 S.Ct. 1748 (2001):

> [u]nder *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and subsequent cases, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Reasonable suspicion is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Elaborating on this point, the Supreme Court has said, "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." The question we must address is whether [the police officers] had the "minimal level of objective justification" necessary for a *Terry* stop. And in evaluating reasonable suspicion, "we must consider the totality of the circumstances – the whole picture'."

Id. at 353 (citations omitted). The totality of the circumstances includes the location, the history of crime in the area, the suspect's nervous behavior or evasiveness, and the officer's "commonsense judgments and inferences about human behavior." Johnson v. Campbell, 332 F.3d 199, 206 (3d Cir. 2003) (internal quotation marks and citations omitted).

Here, given the fact that Officer Pacheco had been informed that the license plate on the vehicle Mr. Jackson was driving had been reported stolen, clearly Officer Pacheco had a reasonable, articulable suspicion to believe that Jackson was engaged in criminal activity. Therefore, Officer Pacheco did not violate Mr. Jackson's Fourth Amendment rights when he stopped the vehicle.

**B. The weapon found in Mr. Jackson's vehicle.**

Mr. Jackson next argues that the gun found by Officer Reddy in Mr. Jackson's vehicle was illegally seized without a warrant from his vehicle because at the time the gun was found, it was clear that neither the license plate nor the vehicle in question were stolen and therefore, there was neither reasonable suspicion nor probable cause for the police to search the vehicle. To the contrary, the government argues that the gun was found during the course of the Terry stop while the officers were determining the status of the license plate on Mr. Jackson's vehicle and based upon Mr. Jackson's suspicious conduct.

We find that Officer Reddy's seizure of the weapon did not violate Mr. Jackson's Fourth Amendment rights because it was a valid seizure of evidence in plain view. In U.S. v. Menon, 24 F.3d 550 (3d Cir. 1994), the appellate court explained:

> In Horton, the Supreme Court set forth three requirements for valid seizures of evidence in plain view. First, the officer must not have violated the Fourth Amendment in "arriving at the place from which the evidence could be plainly viewed." Second, the incriminating character of the evidence must be "immediately apparent." Third, the officer must have "a lawful right of access to the object itself."

5

Id. at 559 (quoting Horton v. California, 496 U.S. 128, 141, 110 S.Ct. 2301, 2310, 110 L.Ed.2d 112 (1990) (citations omitted)). Here, the gun was in Officer Reddy's plain view when he flashed his flashlight inside the car as a result of Mr. Jackson, who appeared nervous, twice moving towards the open driver's side door while Officer Pacheco was investigating the status of the allegedly stolen license plate. The incriminating character of the weapon Officer Reddy observed was immediately evident. Additionally, Officer Reddy was lawfully positioned beside the vehicle when he observed the gun lying on the floor of the car; he was there as a result of a Terry stop which we have already determined was legal, and he was reacting to Mr. Jackson's suspicious conduct during the course of the Terry stop. Finally, relevant under the facts of this case, "the use of a flashlight to aid the officer's vision did not transform the observations justified under the 'plain view doctrine' into an illegal search." U.S. v. Rickus, 737 F.2d 360, 366 n. 3 (3d Cir. 1984) (citations omitted).

### C. Mr. Jackson's statements with respect to the gun.

Mr. Jackson also seeks to suppress statements he made with respect to the gun found in the vehicle. During the course of the Terry stop, Officer Pacheco asked Mr. Jackson if he had a permit for the firearm. Mr. Jackson responded "No." Mr. Jackson then immediately stated: "The weapon is not in my name. . . . I just bought it off of some guy." At issue is whether this questioning of Mr. Jackson by Officer Pacheco was in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966) because Officer

Pacheco questioned Mr. Jackson about the weapon while he was handcuffed without first giving Mr. Jackson a Miranda warning. This is a closer legal issue than the first two issues.

Under Miranda, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogations of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda, 384 U.S. at 444. The United States Court of Appeals for the Third Circuit has addressed what is required for a person to be "in custody" for the purposes of Miranda. In United States v. Willaman, 437 F.3d 354 (3d Cir.), cert. denied, 547 U.S. 1208, 126 S.Ct. 2902 (2006), the court of appeals instructed that "[a] person is in custody when he either is arrested formally or his freedom of movement is restricted to 'the degree associated with a formal arrest'." Id. at 359 (citation omitted). "For a person to be in custody when he has not been arrested, 'something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so.'" Id. (citations omitted). The Willaman court further explained:

> Courts consider a variety of factors when determining if a person was in custody, including: (1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning.

Id. at 359-60 (citations omitted).

The government correctly explains: "officers are permitted to ask a detainee a moderate number of questions to determine the person's identity and to try to obtain information confirming or dispelling their suspicions" and cites in support of their position U.S. v. Thomas, 142 Fed.Appx. 896 (6th Cir. 2005) and U.S. v. Denson, Crim. No. 06-75 (W.D. Pa. 2006, Conti, J.). But the case at hand is factually distinct from those cases; in the other cases, the basis for the initial Terry stop was the reasonable suspicion that the defendant was in possession of a weapon and the officers were investigating whether or not said possession was lawful. Here, the conduct that initially warranted the Terry stop was the suspicion that Mr. Jackson was driving a car with a stolen license plate, not that he had a weapon illegally in his possession. Therefore, questions with respect to the lawfulness of Mr. Jackson having a gun had nothing to do with whether the license plate was stolen. "To ensure that the resulting seizure is constitutionally reasonable, a Terry stop must be limited. The officer's action must be '"justified at its inception, and . . . reasonably related in scope to the circumstance which justified the interference in the first place"'." Hiibel v. Sixth Judicial District Court of Nevada, Humboldt County, 542 U.S. 177, 124 S.Ct. 2451 (2004).

At the time Officer Pacheco asked Mr. Jackson whether he had a permit for the weapon, Mr. Jackson was standing handcuffed at the rear of his vehicle where he'd been placed by the officers, and he had been handcuffed throughout the length of the

8

investigation. At no time was Mr. Jackson told that he was not under arrest or that he was free to leave. While this is a close call, and we acknowledge that "[t]here is no per se rule that pointing guns at people, or handcuffing them, constitutes an arrest,"[1] based upon the above-stated facts we find that Mr. Jackson's freedom of movement was restricted to the degree associated with a formal arrest and therefore, Mr. Jackson was in custody at the time Officer Pacheco questioned him about the gun. Accordingly, Officer Pacheco should have given the Miranda warning to Mr. Jackson prior to inquiring as to whether he had a permit for the weapon, and his failure to do so violated Mr. Jackson's rights under the Fifth Amendment to the United States Constitution. See U.S. v. Asberry, 2007 WL 781475, *5 (N.D. Ohio March 12, 2007) (there the defendant was initially stopped for having an open container of alcohol; he stepped out of the car and had his hands on the car when an officer saw a loaded gun in the car. The defendant, unsolicited, stated that the gun was his and that it was registered. Defendant's subsequent response to the officer's question whether he had a permit to carry a concealed weapon was suppressed because the defendant was in custody, and the question was "reasonably likely to elicit an incriminating response.").

Our inquiry into the admissibility of Mr. Jackson's statements relative to the weapon, however, is not complete. The government argues that even if Officer Pacheco should have mirandized Mr. Jackson prior to asking him whether he had a permit for the

---

[1] Baker v. Munroe Tp, 50 F.3d 1186, 1193 (3d Cir. 1995).

weapon, said statements still are admissible in under the "inevitable discovery" doctrine. Under the inevitable discovery rule, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means, then the deterrence rationale has so little basis that the evidence should be received. Anything less would reject logic, experience, and common sense." Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501(1984).

Here, although the government argued in its written response to Defendant's motion to suppress that when there is a question as to whether an individual has the right to possess a firearm, it is standard City of Pittsburgh police procedure to contact the Pittsburgh Police Index to determine the status of an individual's right to possess firearms, evidence of this policy was not introduced at the suppression hearing.  Absent such evidence, we find that the government has not established by a preponderance of the evidence that had Officer Pacheco not asked Mr. Jackson whether he had a permit for the weapon or Mr. Jackson had chosen not to answer the question, the officers would have discovered by lawful means that Mr. Jackson did not have a permit for the weapon and that the weapon was not registered in his name.

Nor was Mr. Jackson's statement that "The weapon is not in my name. . . . I just bought it off of some guy," an unsolicited, spontaneous utterance as argued by the government such that it is admissible even absent a required Miranda warning.  To the contrary, this statement was made in direct response in Officer Pacheco's question about

whether Mr. Jackson had a permit for the weapon. Indeed, when Officer Pacheco testified about Mr. Jackson's response to his question, Officer Pacheco stated Mr. Jackson's answer as if Mr. Jackson's response was one long run-on sentence.

In conclusion, under the factual circumstances of this case, Officer Pacheco's questioning of Mr. Jackson with respect to the weapon found in Mr. Jackson's car violated Mr. Jackson's rights under the Fifth Amendment and Mr. Jackson's statements about the weapon must be suppressed.

### III. Conclusion.

For the reasons set forth above, the Defendant's Motion to Suppress is granted in part and denied in part. An appropriate order follows.

September 21, 2009

*[signature]*
Maurice B. Cohill, Jr.
Senior District Court Judge

11